**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

|  | Case No. 12-CV-00371(VEB) |
|---|---|
| JOSHUA WILLIAM SAX,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | DECISION AND ORDER |

## I. INTRODUCTION

In December of 2009, Plaintiff Joshua William Sax applied for Supplemental

Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under

the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Calbom & Schwab, P.C., Jeffrey Schwab, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9).

On February 3, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The procedural history may be summarized as follows:

On December 18, 2009, Plaintiff applied for SSI benefits and DIB, alleging disability beginning July 1, 2007. (T at 144-45, 146-49).[1]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On March 9, 2011, a hearing was held before ALJ R.J. Payne. (T at 40).  Plaintiff appeared with an attorney and testified. (T at 57-75). The ALJ also received testimony from Dr. Marian Martin, a psychological expert. (T at 44-57).

---

[1] Citations to ("T") refer to the administrative record at Docket Nos. 11-13.

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

On April 7, 2011, ALJ Payne issued a written decision denying the applications for benefits.    (T at 11-29).    The ALJ's decision became the Commissioner's final decision on April 5, 2012, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On May 31, 2012, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on August 6, 2012. (Docket No. 10).

Plaintiff filed a motion for summary judgment, with supporting memorandum of law, on December 3, 2012. (Docket No. 16, 17).  The Commissioner moved for summary judgment, supported by a memorandum of law, on January 15, 2013. (Docket No. 18, 19).  As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 9).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is dismissed.

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2)  a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

**C.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date and met the insured status requirements of the Social Security Act through March 31, 2013. (T at 16-17). The ALJ determined that Plaintiff's attention deficit hyperactivity disorder, major depressive disorder, possible anxiety/posttraumatic stress disorder, personality disorder, and alcohol abuse were impairments considered "severe" under the Act. (Tr. 17-20).

The ALJ found that Plaintiff's impairments, including his substance abuse, met several of the impairments set forth in the Listings (in particular, Listings §§ 12.04, 12.06, 12.08, and 12.09). (T at 21).  However, because substance abuse was at issue, rather than immediately awarding benefits (as would ordinarily be the case for a claimant whose impairments met several of the Listings impairments); the ALJ was required to conduct the sequential evaluation a second time to consider whether Plaintiff would still be disabled absent substance abuse. *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); 20 CFR § 404.1535.

At step two of this re-evaluation, the ALJ found that even if Plaintiff stopped the substance abuse, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and (thus) Plaintiff had severe impairments irrespective of his substance abuse. (T at 21).

However, the ALJ concluded that if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listings. (T at 22). The ALJ found that if Plaintiff stopped the substance abuse, he would have the residual functional capacity to perform a full range of work at all exertional levels, with some non-exertional limitations. (T at 22-24). The ALJ determined that Plaintiff could perform his past relevant work as a warehouse deliverer if he stopped abusing alcohol. (T at 24-25).

Accordingly, the ALJ concluded that Plaintiff would not be disabled if he stopped his substance abuse and, as such, his substance abuse was a contributing factor material to the determination of disability pursuant to 20 CFR §§ 404.1520 (f) and 416.920 (f). Thus, the ALJ found that Plaintiff was not entitled to benefits at any time from the alleged onset date through April 7, 2011 (the date of the ALJ's decision). (T at 25). As noted above, the ALJ's decision became the Commissioner's final decision on April 5, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## D.    Plaintiff's Argument

Plaintiff contends that the Commissioner's decision should be reversed. This case presents a single issue –whether the ALJ's conclusion that Plaintiff's substance

abuse was a contributing factor material to the disability determination was supported by substantial evidence.

## IV. ANALYSIS

When a Social Security disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of substance abuse on the claimant. If the ALJ finds that the claimant is not disabled, then the ALJ proceeds no further.  If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation a second time and considers whether the claimant would still be disabled absent the substance abuse.  *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR § 404.1535.

The claimant bears the burden at steps 1-4 of the second sequential analysis of showing substance abuse is not a "contributing factor material to his disability." *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1177 (E.D.Wa. 2011)(citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).  To meet this burden, the claimant "must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish his alcoholism is not a contributing

factor material to his alleged mental impairments and disability." *Hardwick*, 782 F.

Supp. 2d at 1177 (citing *Parra*, 481 F.3d at 748-49).

Here, as noted above, the ALJ found that Plaintiff's impairments, including

his substance abuse, met several of the impairments set forth in the Listings (in

particular, Listings §§ 12.04, 12.06, 12.08, and 12.09). (T at 21).  However, the ALJ

concluded that if Plaintiff stopped the substance abuse, he would not have an

impairment or combination of impairments that met or medically equaled any of the

impairments in the Listings. (T at 22).  Moreover, the ALJ found that if Plaintiff

stopped the substance abuse, he would have the residual functional capacity to

perform a full range of work at all exertional levels, with some non-exertional

limitations. (T at 22-24).  In particular, the ALJ concluded that Plaintiff would have:

no more than mild difficulty understanding, remembering, and carrying out short

and simple or detailed instructions; moderate difficulty maintaining attention and

concentration for extended periods and working in coordination with or proximity to

others without being distracted by them; moderate difficulty interacting

appropriately with the public and responding appropriately to supervisors, but no

more than mild difficulty getting along with co-workers or maintaining socially

appropriate behavior; moderate difficulty responding to changes in the work setting;

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

and no more than mild limitations completing a normal workday and workweek and maintaining regular attendance. (T at 22-24).

The record shows that Plaintiff successfully completed inpatient chemical dependency treatment in May of 2010 and apparently refrained from substance abuse thereafter. (T at 364-67).  Thus, evidence from the period after Plaintiff completed treatment is highly relevant to assessing his residual functional capacity when not engaged in substance abuse. That evidence may be summarized as follows:

In August of 2010, Plaintiff was evaluated by Jan Davis-Morgan, a nurse practitioner.  Ms. Davis-Morgan reported that Plaintiff felt hopeful and proud that he was sober. His energy level and concentration were good, but he had problems sleeping.  Ms. Davis-Morgan indicated that Plaintiff had some problems related to PTSD, but she did not believe he met the full criteria for a diagnosis. She opined that Plaintiff's panic disorder with some agoraphobia was "problematic." (T at 392). Ms. Davis-Morgan assigned a Global Assessment of Functioning ("GAF")[2] score of 45 (T at 392), which is indicative of serious impairment in social, occupational or school functioning. *See Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).  Ms. Davis-Morgan recommended

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

increasing Plaintiff's dose of seroquel (a prescription medication used to treat bipolar disorder) to help his sleep and stabilize his mood. (T at 393).

Plaintiff was examined by Manya Dobaj, a psychiatric nurse practitioner, in December of 2010.  She reported that Plaintiff was "doing much better now that he is sober" and indicated that she would re-evaluate him for bipolar disorder. (T at 433).  In January of 2011, Ms. Dobaj described Plaintiff's mood as "stable" on his current medication regimen.  (T at 432).  In February of 2011, Ms. Dobaj reported that Plaintiff had some mood lability. (T at 431).  Later that month, Ms. Dobaj noted that Plaintiff was "doing well" with no angry outbursts or fighting. (T at 430).  In March of 2011, Ms. Dobaj described Plaintiff as "stable" on his current medication regimen. (T at 429).

Following Plaintiff's second February 2011 visit, Ms. Dobaj completed a form entitled "Mental Medical Source Statement."  She assessed mild limitation as to Plaintiff's ability to remember and carry out detailed instructions, but no limitation as to his ability to remember locations and work-like procedures or his ability to understand, remember, and carry out very short and simple instructions. (T at 395).  She found moderate limitation as to Plaintiff's ability to maintain attention and concentration for extended periods and his ability to work in coordination with or proximity to others without being distracted by them.  (T at 396).  Ms. Dobaj opined

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

that Plaintiff had mild limitation as to performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. (T at 396). She found no limitation with regard to making simple work-related decisions and mild limitation as to completing a normal workday and work week without interruptions from psychologically based symptoms. (T at 396).

In terms of social interaction, Ms. Dobaj assessed no limitation as to interacting appropriately with the general public, mild limitation with respect to getting along with co-workers and peers, and a moderate limitation as to accepting instructions and responding appropriately to criticism from supervisors. (T at 396). She found a mild limitation with regard to maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (T at 397). Concerning adaptation skills, Ms. Dobaj opined that Plaintiff had moderate limitation as to his ability to respond appropriately to changes in the work settings and mild limitation with regard to his ability to set realistic goals or make plans independent of others. (T at 397).

Dr. Marian Martin, a psychologist, reviewed Plaintiff's medical records and completed a psychiatric review assessment in March of 2011. Dr. Martin opined that, without substance abuse, Plaintiff had mild restriction of activities of daily

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 421).

Dr. Martin also testified at the administrative hearing and reiterated the assessment contained in her March 2011 report. (T at 48-51).  However, at the outset of the hearing, Dr. Martin asked the ALJ whether there were any treatment records from the period after August of 2010. (T at 45).  Plaintiff's attorney advised that there were such records, but said that he did not have them with him. (T at 45). It thus appears that Dr. Martin did not review the treatment notes and assessment from Ms. Dobaj summarized above.

Nevertheless, Dr. Martin said that she would proceed "based on the information that I have," explaining that the records she had "were sufficient for me to form an opinion." (T at 45).  On cross-examination by Plaintiff's counsel, Dr. Martin was asked about Plaintiff's social skills.  Dr. Martin again referenced the lack of records since August of 2010, saying that "there isn't a lot of the information, basically, there after his treatment . . . ." (T at 55).  She noted that there had not been a "consultative exam-type of evaluation of his social functioning or [activities of daily living." (T at 56).

The ALJ afforded significant weight to Dr. Martin's testimony. (T at 24). Plaintiff challenges this aspect of the ALJ's decision and contends that the ALJ

should have ordered a consultative examination to assess his mental health limitations. Plaintiff also questions the ALJ's reliance on Dr. Martin's testimony given the psychologist's own concerns about the lack of evidence of Plaintiff's condition after August of 2010.

As a threshold matter, this Court finds that it was error for the ALJ to rely so heavily on Dr. Martin's opinion without providing her with access to the post-August 2010 treatment records.[3] However, in the context of this particular case, the error was harmless. The treatment records from the post-August 2010 period (including, most importantly, the February 2011 assessment from Ms. Dobaj, the treating nurse practitioner) are consistent with Dr. Martin's opinion and, ultimately, support the ALJ's RFC determination. In other words, the evidentiary gap noted by Plaintiff (and Dr. Martin) has been filled with the post-August 2010 treatment notes and Ms. Dobaj's assessment. The complete record contains substantial evidence sufficient to support the ALJ's conclusion that Plaintiff's substance abuse was a contributing factor material to his disability. The post-August 2010 evidence of record was sufficient and the ALJ was not obliged to order a consultative examination under the circumstances. *See Anderson v. Colvin*, No. CV-12-0054,

---

[3] The fact that Dr. Martin did not have access to the post-August 2010 records does not mean it was error to rely on her opinion at all. She is still a qualified expert who examined voluminous records of Plaintiff's treatment history. However, the fact that she had (apparently) not been given an opportunity to review the most recent and relevant evidence should have been considered when deciding how much weight to give her opinion.

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

2013 U.S. Dist. LEXIS 150381, at *15-16 (E.D.Wa. Oct. 18, 2013). The treating nurse practitioner's findings are essentially consistent with the ALJ's assessment. This evidence, combined with the treatment notes during the period after August 2010 (which generally described positive progress) and Dr. Martin's review, is sufficient to sustain the Commissioner's conclusion under the applicable standard of review. *See Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## V. CONCLUSION

After reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff was not entitled to benefits. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB

## V. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 16**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No. 18**, is **GRANTED**.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Commissioner and **CLOSE** the file.

DATED this 24th day of March, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – SAX v COLVIN 12-CV-00371-VEB